UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RICHARD KOSTRZEWSKI,<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs.* | ) | 1:09-cv-1241-JMS-TAB |
| | ) | |
| STATE FARM FIRE & CASUALTY CO.,<br>    *Defendant.* | )<br>)<br>) | |

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Richard Kostrzewski owned residential property in Indianapolis, Indiana that was insured by Defendant State Farm Fire and Casualty Company ("State Farm"). Mr. Kostrzewski alleges that on or about December 30, 2008, his personal property was stolen from his residence for a total loss in the amount of $50,000. [Dkt. 1-1 at ¶¶ 4, 5.] After State Farm denied his claim under the policy, Mr. Kostrzewski filed suit in an Indiana state court for compensatory damages under the policy and punitive damages for bad faith, alleging that State Farm breached its duty to settle his claim in good faith and acted wantonly and willfully against him. [*Id*. & 9.] State Farm removed the case to this Court and has moved for summary judgment on the grounds that Mr. Kostrzewski's loss is excluded by the policy language and that it has a good faith basis for denying his claim.

A motion for summary judgment asks the Court to rule in favor of the moving party because there is no genuine issue surrounding any material fact and the moving party is entitled to judgment as a matter of law. *Zerante v. DeLuca*, 555 F.3d 582, 585 (7th Cir. 2009) (citing Fed. R. Civ. Pro. 56(c)). When considering a summary judgment motion, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve any doubt as to the existence of a genuine issue for trial against the moving party. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The non-moving party must do more, however, than just demonstrate a factual disagreement between the parties; it must demonstrate that the disputed factual issue is "material." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

**FACTS**

The parties do not dispute the following facts. Mr. Kostrzewski and Karen Jean Passwater had a marriage ceremony in Tennessee on March 6, 2008. [Dkt. 23-1.] In July 2008, Mr. Kostrzewski purchased a house on South Chester Avenue in Indianapolis (the "Residence"). [Dkt. 23-2 at 29-30.] State Farm issued a policy of insurance providing coverage for the residence and personal property from June 2008 to June 2009 (the "Policy"). [Dkt. 23-3.] The Policy contains the following coverage provisions and exclusions with respect to theft of personal property:

> 9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.
>
> This peril does not include:
> \* \* \*
> b. loss caused by theft:
>
>   (1) committed by an **insured** or by any other person regularly residing on the **insured location**. . . . .

[Dkt. 23-3 at 6 (original emphasis).] The Policy defines "insured" as "you and, if residents of your household . . . your relatives . . . .@ [*Id.* at 5.][1]

On August 27, 2008, Ms. Passwater filed a Petition for an Order for Protection, naming Mr. Kostrzewski as the person to be restrained. [Dkt. 23-4 at 2.] Ms. Passwater identified Mr. Kostrzewski as her husband, [*id.*], and listed the Residence as the address she wished to use for the purpose of serving pleadings, notices, and court orders, [*id.* at 3]. She asked the court to or-

---

[1] The Policy also defines "you" to include the named insured—in this case, Mr. Kostrzewski—and the named insured's spouse, if a resident of the named insured's household. [Dkt. 23-3 at 5.]

der Mr. Kostrzewski to stay away from "my residence" and to order him to give her the possession and use of the Residence. [*Id.* at 5.] The court issued an Order for Protection the same day, ordering, in relevant part, that Mr. Kostrzewski (1) be removed and excluded from "the Petitioner's residence;" (2) stay away from "the residence" and/or place of employment "of the Petitioner;" and (3) stay away from the Chester Street Residence, described as the place "frequented by the Petitioner and/or Petitioner's family or household members." [Dkt. 23-5 at 3.]

On November 18, 2008, Mr. Kostrzewski filed a Verified Petition for Annulment, alleging that his marriage to Ms. Passwater was void because he had a valid prior marriage when he entered into it, and that the marriage was voidable because it was brought about through Ms. Passwater's fraud and entered into without his true consent. [Dkt. 23-6 at 2.] Mr. Kostrzewski requested a decree of annulment and a determination that his interests in real estate, including the Residence, and personal property be his free and clear of any interest of Ms. Passwater. [*Id.* at 3.] Mr. Kostrzewski asserted in the Petition that "[Ms. Passwater] and others through her, have been occupying since some time in August, 2008 without [his] consent and without making payment on [his] mortgage against said real estate." [*Id.*] He asked the court, in part, for Aan order and judgment awarding him sole ownership and possession of [the Residence] and all his personal property therein . . . .@ [*Id.* at 5.]

The same day that Mr. Kostrzewski filed his petition for annulment, he also filed a Motion for Provisional Relief with the state court requesting, in part, an order directing Ms. Passwater to "promptly vacate" the Residence and "to leave all of [Mr. Kostrzewski's] personal property there when she vacates." [Dkt. 23-7 at 2, 3.] If the court would not order Ms. Passwater to immediately vacate, Mr. Kostrzewski asked the court to order her to make future mortgage pay-

ments and to reimburse him for past mortgage payments that he had made since the time he was excluded from the Residence pursuant to the Order for Protection. [*Id.* at 3.]

In support of his motion for provisional relief, Mr. Kostrzewski submitted an affidavit in which he averred that in August 2008, Ms. Passwater "took sole possession of this residence and has opened it to occupancy by a number of her friends and acquaintances, and members of her family." [Dkt. 23-7 at 5.] He also averred that "[t]he protective order, among other things, excludes me from contacting the respondent at 'her' residence," and "[b]ecause of the continued use of my said residence by the respondent, and a number of other persons who are there without my consent, the property is being subjected to extraordinary wear and tear, and to irreparable damage." [*Id.* at 6.]

Mr. Kostrzewski regained possession of the Residence on or about January 2, 2009, and discovered at that time that all of his personal property that was inside the residence was gone. [Dkts. 23-9 at 3; 23-2 at 5.][2] He reported the claim to State Farm the same day.[3] [Dkt. 23-8 at 3.] A State Farm claim representative met with Mr. Kostrzewski at the Residence a few days later. [*Id.*] Mr. Kostrzewski referred to Ms. Passwater as a former girlfriend during that conversation, but he also provided the claim representative with information and documents referring to his pending Petition for Annulment. [*Id.*] This suggested to the claim representative that Ms. Passwater was Mr. Kostrzewski's spouse and that "there may be no coverage for the theft." [*Id.*]

---

[2] Presumably, the court granted Mr. Kostrzewski's motion for provisional relief, although a copy of an order to that effect is not included in the record. That court appears to have held a hearing in December 2008 at which Ms. Passwater appeared and during which the court ordered her to pay the December 2008 mortgage payment. [Dkt. 23-9 at 4.]

[3] According to Mr. Kostrzewski, there was no one at the Residence when he regained possession and the locks had to be drilled in order to gain access to the Residence. [Dkt. 23-2 at 4-5.]

On or about February 3, 2009, State Farm denied Mr. Kostrzewski's claim because Ms. Passwater was his spouse at the time of the loss and, therefore, was an "insured" under the policy. [Dkt. 23-8 at 11-12.] Consequently, State Farm denied coverage on the basis that the Policy excluded coverage for theft caused by an "insured" or any other person regularly residing at the property.[4] [*Id.*]

On April 21, 2009, the court held a hearing on Mr. Kostrzewski's Petition for Annulment. [Dkt. 23-9 at 2.] Ms. Passwater did not appear and the court found her in default. [*Id.*] The Court issued a Decree of Annulment[5] the following day and voided the purported marriage between Mr. Kostrzewski and Ms. Passwater because Mr. Kostrzewski already had a lawful wife at the time of the purported marriage. [*Id.*] That court found that Ms. Passwater had held the "sole and exclusive possession and use of [the Residence] and the said household goods and furnishings in it" since the issuance of the Order of Protection in August 2008; therefore, she was "solely responsible for the unauthorized taking and removal of the household goods and furnishings." [*Id.* at 3-4.] The court awarded Mr. Kostrzewski judgment against Ms. Passwater in the amount of $40,000 for the unauthorized removal and dispositions of Mr. Kostrzewski personal property. [*Id.* at 3.] The court also ordered Ms. Passwater to deliver to Ms. Kostrzewski any of his person-

---

[4] State Farm's denial letter also states that Mr. Kostrzewski "indicated that Karen Passwater had stolen property belonging to you from your home." [Dkt. 23-8 at 1.] State Farm's briefs do not cite these passages or otherwise assert or rely upon a claim by Mr. Kostrzewski that Ms. Passwater was residing at the Residence, had stolen his property, or caused the damage to the Residence. During his deposition (in a passage also unmentioned by the parties), Mr. Kostrzewski testified: "I don=t know if she [Ms. Passwater] stole anything. I never seen the woman take nothing. I never seen her took anything. Let=s get that clear. Hey, I wasn't there, don't know." [Dkt. 23-2 at 5.]

[5] It appears that the decree signed by the state court was actually prepared by Mr. Kostrzewski or on his behalf. It contains several fill-in-the-blank lines for an amount of damages, [dkt. 23-9 at 3, 5], as well as a paragraph seeking recovery for an alleged forged check that was stricken by the court [*id.* at 5].

al property or effects that she, or any other person known to her, still possessed or to disclose the location of same if she had knowledge thereof. [*Id*. at 6.]

Mr. Kostrzewski filed this suit against State Farm four months later.

## DISCUSSION

State Farm argues that there is no genuine dispute about two facts that dispose of Mr. Kostrzewski's claim: (1) that Ms. Passwater regularly resided at the Residence at the time of the theft, and (2) that Ms. Passwater is solely responsible for the theft. State Farm contends that these two facts are conclusively established by the state court's annulment findings and supported by documents Mr. Kostrzewski filed in support of his Petition for Annulment.[6] [Dkt. 23 at 7-8.]

Although State Farm initially denied Mr. Kostrzewski's claim because Ms. Passwater was his spouse at the time of the loss and, therefore, was an "insured" under the policy, it now defends its denial on the theory that Ms. Passwater stole Mr. Kostrzewski's property from the Residence, where she regularly resided at the time of the theft. [*See* dkt. 23 at 3 n.2 ("State Farm asserts no argument on non-coverage based on Ms. Passwater's status as the spouse of Mr. Kostrzewski at the time of the loss.").] Absent a showing of prejudice, which Mr. Kostrzewski does not contend exists, an insurer may raise additional defenses to coverage in litigation and is not bound by the initial grounds for denial of a claim. *Terre Haute First Nat*l Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d 1336, 1338 (Ind. Ct. App. 1993); *T.B. ex rel. Bruce v. Dobson*, 868 N.E.2d 831, 838 (Ind. Ct. App. 2007), *trans. denied*.

Mr. Kostrzewski's opposition to State Farm's motion is primarily directed at State Farm's initial reason for denying his claim. Specifically, he argues that because his marriage to

---

[6] Although State Farm's language suggests that it is trying to invoke *res judicata*, it did not present an issue preclusion argument.

Ms. Passwater was void *ab initio*, she was not his relative and, thus, not an insured under the policy. [Dkt. 28 at 1-2, 5-6.] Even assuming for the sake of the argument that Mr. Kostrzewski's position is valid, it does not address the argument presented by State Farm's motion—that coverage did not exist under the Policy because Ms. Passwater regularly resided at the Residence at the time she stole Mr. Kostrzewski's property.

Mr. Kostrzewski's response to State Farm's argument is limited to one sentence: "Karen Jean Passwater was not regularly residing on the location known as [the Residence]." [Dkt. 28 at 3.] Mr. Kostrzewski does not cite any evidence to support this assertion and does not respond to the contrary evidence in the record. In fact, in November 2008, Mr. Kostrzewski attested to the state court in support of his motion for provisional relief that Ms. Passwater "took sole possession of the [R]esidence" engaged in "the continued use" of it without his consent. [Dkt. 23-7 at 5-6.] Additionally, Ms. Passwater listed the Residence as her address with the state court for service of court papers. [Dkts. 23-4 at 3.] This evidence reasonably demonstrates that Ms. Passwater regularly resided at the Residence during the relevant time period. Mr. Kostrzewski's bare assertion, unsupported by any evidence, does not create a genuine dispute about this fact.

Although State Farm did not present direct evidence in this forum proving that Ms. Passwater stole Mr. Kostrzewski's personal property from the Residence, the evidence it did designate establishes that Mr. Kostrzewski claimed she did during the state court annulment proceedings. There he presented sufficient documentary and/or testimonial evidence to persuade that court to find that Ms. Passwater was "solely responsible for the unauthorized taking and removal of the household goods and furnishings." [Dkt. 23-9 at 3.]

The doctrine of judicial estoppel prevents a litigant from prevailing twice on opposing theories, and because the doctrine protects the integrity of the judicial system itself, independent

of the parties' interests, a court may raise it *sua sponte*. *In re Airadigm Communications, Inc.*, 616 F.3d 642, 661 n.14 (7th Cir. 2010). Mr. Kostrzewski succeeded in persuading the annulment court that Ms. Passwater was responsible for the theft of his personal property from the Residence and obtained a judgment against Ms. Passwater based on his earlier assertions and evidence. His theory of recovery in the annulment proceeding is clearly inconsistent with any assertion that she did not commit the theft or that he does not know who did. In other words, he would gain an unfair advantage over, and impose an unfair detriment on, State Farm if he were permitted to make inconsistent assertions in order to prevail in this case. *See id.* at 661.

As it is, Mr. Kostrzewski does not contest, or even mention, State Farm's assertions that Ms. Passwater was responsible for the theft from the Residence. While this failure alone may not ordinarily justify summary judgment because State Farm has the burden of proof on its coverage exclusions, *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 725 (Ind. Ct. App. 2004), *trans. denied*, the doctrine of judicial estoppel spans any gap in the evidentiary showing.

## CONCLUSION

For the reasons stated herein, State Farm is entitled to summary judgment as a matter of law, and its motion is **GRANTED**. [Dkt. 22.] Judgment will issue accordingly.

11/29/2010

*(signature)*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Dennis F. Cantrell
CANTRELL, STRENSKI & MEHRINGER, LLP
dcantrell@csmlawfirm.com

Patrick Stern
jimi@jameshendrix.info

James P. Strenski
CANTRELL, STRENSKI & MEHRINGER, LLP
jstrenski@csmlawfirm.com